May it please the court Timothy Berg of Fenimore Craig on behalf of the Port of Oakland I'd like to reserve five minutes for rebuttal. While the district court correctly concluded that the city had not not made out a sufficient case for preliminary injunction based on either initial interest or source confusion the district court erroneously entered a preliminary injunction based on affiliation or association confusion. The district court affiliation confusion finding centers on general confusion about affiliation or ownership of the Oakland Airport divorced from actual consumer decision-making. It does not satisfy the Lanham Act's requirement that the confusion alleged must plausibly influence a purchaser's decisions of good or services as are required by this court's decisions in the Reardon LLC case set in our brief and in the Bosley case set in our brief. I mean this this part of the district court's analysis is about the consumer care piece of this but the you know the sleek craft factors are they're fact-specific they're case-specific we've said that before there's a lot of different factors so I mean in a case like this where we have names that seem fairly similar services that are identical the same geographic area why would that not be sufficient on its own? It's not because your honor the the purpose of the trademark laws isn't to protect names in the abstract it's to protect names related to consumers making decisions and here Judge Hickson did not tie his finding of affiliation confusion to to any kind of consumer decision-making and I would suggest to the court that's common sense if I go buy an airline ticket I look at where I want to go I look at what the price is I look at what the airline is I look at the times they're coming I don't care who owns the airport or who the airport is affiliated with it's not something that affects decision-making by consumers and therefore it's not something forbidden or protected depending on your point of view by the Lanham Act. I guess the question one would have maybe maybe that's correct you know but there's there's other theories of confusion too that just simply people who hear these two names and who are trying to go to one airport or buy a ticket will be confused and it seems like a sort of common-sense reaction to the similarity of the names. Remember that Judge Hickson found specifically that no one would confuse the two airports as a matter of initial interest or as a matter of purchase. All he found was that someone somewhere and there's not much evidence on there's virtually no evidence on this might think that the two airports were affiliated that San Francisco owned both airports that the airports were owned by a common entity and that no one tied that and no one can tie that to a purchase decision by a consumer. First of all consumers buy tickets from airlines and they I say they buy them on location price and schedule they don't buy them on airport ownership. Frankly they don't care. Is affiliation any of the sleek craft factors? Not not directly your honor no I think what sleek craft asks you to do is go through a series of things but separate and apart from the individual sleek craft factors and this court has said it's not a checklist you don't win if you get seven of eight it's a it's a qualitative decision the court needs to make and that qualitative decision here is whether that there is customer confusion that affects a purchasing decision and we suggest there's nothing in the record that establishes there is and frankly there's nothing in the record that could establish could establish there would be because that's not how people buy airline tickets. When I've purchased a ticket to come here from Phoenix I had to put OAK in to get to Oakland. If I had wanted to go to San Francisco I'd have had to put SFO in when I bought my ticket. I wouldn't be confused about which airport I was going to and frankly I wouldn't be confused about nor care about who owned or were affiliated in those airports. Well but I mean I'm not sure the record would suggest that every consumer is as sophisticated I mean there are lots of different people who are buying tickets here. Actually your honor Judge Hickson again found that customers are fairly sophisticated when they shop on the internet and they exercise a high degree of care when they make this kind of purchase both because they're doing it on the internet and because airline tickets are relatively expensive as I can tell you having flown up here. Purchase it's not like going to buy a stick of what we used to call double bubble bubble gum for five cents back when I was a kid. What are the limits of this because I mean if consumers are extremely knowledgeable and very careful it would seem that you could just have the exact same name and we would say well you know they'll go on to the website and they'll see OAK and they'll know that these things with literally the exact same name are not are in fact two different things. At some point this has to give way. Perhaps your honor but this isn't that case because these names aren't identical. The name here is the San Francisco Bay Oakland Airport and that. Oakland International Airport. International Airport pardon me your honor and that recognizes three things. One that the airports on San Francisco Bay that it's in Oakland and that it has international flights. That's not the same as San Francisco Airport International Airport's name and. It's pretty close though. But if you look at this Court's decision in the Alpha case that we cite in our brief there are two different companies both of which use the name Alpha at the beginning of their name. I think one's Alpha Industries and the other's Alpha something else. And the Court said you don't look just at the first couple words. The fact that they use the same name isn't itself determinative. And particularly it seems to me it isn't determinative when what you're using is a geographic descriptor. Because. Everybody. Oakland is in the San Francisco Bay area. San Jose is in the San Francisco Bay area depending how broadly you define it. San Francisco is. And all of them ought to be able to accurately describe where they're located. The purpose of saying San Francisco Bay before Oakland is to describe where the airport is located. I spent six months working at this court when I was a very young person. I knew that Oakland was in the Bay Area. Probably most people in the West do. But lots of people in the East don't. And I suggest to you lots of people outside the United States don't. And so the purpose of using San Francisco Bay Oakland Airport was to let people know that Oakland was in the Bay Area. And there's nothing wrong with that particularly when you can't tie it to any kind of customer purchasing decision. Yeah. I mean I guess the intent. I'm not sure I can't recall if the district court I don't think found any kind of ill intent. But even if there wasn't even if even if the motives were entirely pure. I'm not sure that's sufficient. It's one of the factors. It's one of the factors as is customer confusion as is similarity the fact that we have Bay and Oakland in addition to international. There are lots of factors. But here the most important thing I think Your Honor is that there is no tie between anybody purchasing an airline ticket and some confusion about not which airport it is not where the airport is located but who owns the airport or who the airport is affiliated with. I suggest to Your Honor if Judge Hickson had found some other kind of confusion that would be different. But since the difference here is simply a matter of are these two entities related that's not the kind of confusion that kind of confusion has to be tied to some kind of purchasing decision to be actionable. I saw on the record there's a consideration of now a different name. Yes, Your Honor. I know you're under an injunction that you can't use this first name that you want. But what's the status on the other name? I would have to get back to you. I believe that they're considering and may have approved I don't know this for a fact using Oakland San Francisco Bay Airport. So counsel wouldn't that wouldn't that just clarify the things? I mean that seems to have at least seems a little bit more clear that you're talking about Oakland not San Francisco. Your Honor, certainly that one could conclude that's clearer or better a better choice. On the other hand the question here isn't what's the best name we could come up with for our airport. It's whether using San Francisco Bay Oakland International Airport is actionable in the absence of any proof that it affects any consumer decision. And this alternate name is there any indication that your adversaries would be satisfied with that? This is not in the record, Your Honor, but I would tell you that my every indication I have seen is that they would not be satisfied with that. And I'll ask the other side. The analogy I have in mind is you have Washington Dulles, Washington National, and Baltimore Washington. And in general people don't seem to be confused by that, but there's been no litigation on it that I've seen. Yes, Your Honor. Again, I think the point is that the confusion here, this affiliation confusion is completely unmoored from any purchasing. People don't purchase tickets to go to airports. The district judge uses Disneyland example. And the problem with that example is people purchase tickets to go to Disneyland. People don't purchase tickets to go to an airport and they don't care who owns the airport. They're purchasing a ticket to get somewhere to a city, to Oakland, to Phoenix, to San Francisco, to Louisville, wherever they want to go. And that's the purchase decision, not who owns the airport. I have five minutes. If the Court doesn't have any questions, I'll save the remainder of my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, Bobby Gajar from Cooley on behalf of the Plaintiff's Affiliate of the City and County of San Francisco, which I'll refer to as San Francisco or the city. For over 70 years, there's only been one airport in the United States with San Francisco in its name, and that's the San Francisco International Airport. That is an incontestable trademark registration owned by the city. At great effort and expense, San Francisco carefully cultivated its brand to attract travelers worldwide and create a positive experience for travelers and would-be travelers to the region. Before we revisit the District Court's analysis and respond to the Court's criticisms, I thought it would be helpful to take a step back and consider the purpose of the Lanham Act. The purpose of trademark laws, as this Court has held in numerous decisions, is to protect consumers from being misled as to the business from which goods or services emanate or with which they are associated, and two, to protect businesses and their reputation in offering those goods and services to the public. In other words, the right to control the quality of the services sold under their mark. Second, under the Lanham Act, and this goes to Your Honors' question, Judge Boggs, it protects against all types of confusion. It protects against affiliation confusion, connection, false association with another company, between one company and another, or as to the origin, sponsorship, or approval of their services. It's a very broad definition, and for all of these types of confusion, the question is about who's responsible for putting out the goods or services or who's endorsing or approving or validating it. It's essential in a trademark for the owner to be able to exercise quality control, and those concepts go to the heart of this case. The District Court properly applied Sleecraft, an eight-factor heuristic that this Court, time again, has applied, and as the Court explained in its Reardon decision, those factors are intended to function as a proxy or substitute for consumer confusion, and that's exactly how the District Court applied it. So, zooming into the analysis, I'd like to start, and although, Judge Bress, I think you put your finger on it, many of these factors unmistakably weighed in the City's favor, and on appeal, the Court doesn't, the Court doesn't contest three critical ones. The finding that San Francisco's incontestable registration and mark is strong, supported by decades of use, millions of dollars of marketing, recognition, success, rankings in the Wall Street Journal and press, which, by the way, matters because the rankings, our airport's reputation matters. When people read about airports, it informs their decision which airport they want to travel to. That's why the parties spent so much money building infrastructure and trying to create positive experiences for their customers. Second, the Court found that the parties offer identical services. These are competitors offering airports in the same region. You could get no closer. Three, the parties use identical marketing channels. Both airports reach potential consumers through online channels, online travel agencies, apps, ride share and navigation apps, local and national media, and the rankings I referred to. So with these three pivotal factors in favor of the City, neither of them erroneous, we're left to the Court's criticism of the similarity of marks factor and the degree of confusion factor, and then some general comments about affiliation confusion. I'd like to address each of those. I'll start noting Your Honor's comment about the similarity of marks. These marks are similar, and the Court was well within its discretion to find that they were similar. The Port's trademark wholly subsumes San Francisco's registered trademark. It adds some words, but it wholly subsumes it. And when we look at similarity of marks, we don't just try to look for the differences. This Court has long explained you weigh the similarities more heavily than any of the differences. And so while my colleague amplifies the differences for purposes of this argument, and in fact, when consumers encounter these marks, sometimes they see it with the IATA code. They even know what that is, and sometimes they don't. The code doesn't appear on third-party websites all the time. Sometimes it's buried. And so these marks, consistent with precedent in this circuit, such as the Perfume Bay eBay case, which this Court found Perfume Bay completely incorporated eBay's strong mark, and confusion was likely. And that was despite the fact that Perfume Bay used a distinctive logo. And the Court recognized that in searches, the logos don't appear. I'd also suggest to the Court, in its Palm Wonderful case, this Court reversed a finding of no similarity of marks, and instead found that factor weighed heavily in favor of the plaintiff. And it reached that conclusion even though the products at issue there look very different. One was palm in a distinctive bottle, and the other was pure, P-U-R, in a can that used P-O-M with a brev over the letter O. So let's move to the consumer care issue. If one were concerned with the district court's reasoning on the affiliation, would the judgment still be affirmed, or would it have to be sent back? If one were concerned with the affiliation reasoning, right? The district court said, I think that consumers may be confused about the affiliation of the airports. And if I were to say, I'm not sure about that, I'm not sure that consumers care even about that, or why that would necessarily be relevant, would the injunction need to be vacated, or could it still be affirmed? It could still be affirmed, Your Honor, because as you alluded in one of your questions to my colleague, the whole point of the Sleecraft test is to gauge whether consumers are likely to be confused. In decision after decision, this Court has applied that test and reached a conclusion. But you're saying that they're likely to be confused about anything having to do with it? That is, the judge found that there would be confusion on affiliation, but not confusion on point of sale or initial interest. It's confusion of any type actionable under the Lanham Act, Your Honor. And that includes, as I alluded to earlier, under the text of 1125, confusion as to affiliation, sponsorship, approval. These are core concepts that the Lanham Act aims to protect. And so the district court properly analyzed the Sleecraft factors and found that all of the meaningful ones favor the City. I think what I'll do is I'll turn to the Court. If I could ask one other thing, then. Obviously, we haven't found any other cases in this field of litigation, but mentioning Washington, where you have three airports with Washington in each of their names, would that be susceptible to the same analysis? I can't answer that. That wasn't before the district court. The district court considered that there are other cities that have two airports of the same name. Although it was kind of focusing on who owned them, I guess. And there was in the record that those were commonly owned. And it goes back to one of those principles of the Lanham Act. If one city owns both airports that have a similar name, they can control the quality of those airports. As to Your Honor's example, I know that there's a relationship between Washington, Reagan, and Washington, Dulles. I don't know whether there's a relationship with Baltimore, Washington. But I would submit to Your Honor that Baltimore is the biggest city in Maryland, and it's in a completely different state. And I don't know whether consumers affiliate the two, and I don't know under what circumstances the Washington airports decided to coexist with the Baltimore airport. But that is uncommon. Does your client have an objection to the phrase San Francisco Bay being in some part of this name? I would answer the question as, well, yes, in its current name, and yes, in the name that was enjoined. But how about just to any name? I mean, the other names that have been put forward start with Oakland. That seems to present a sort of different question under Sleecraft if that were what the city was asking for here. Under Sleecraft, we still have to analyze whether the marks are similar. And that name change was fairly recent, and so that will be subject to proof. But all of the other factors would remain the same. In terms of their ability to describe, as I understood my colleague's argument, if they want to say that they are located on San Francisco Bay, if that actually meant anything to consumers, and you might have read in Judge Hickson's decision that he questioned why someone would care that it's on San Francisco Bay. They're not there to enjoy the water. And the bay is, I think, hundreds of miles in perimeter. And so I don't know that it tells anybody where an airport is located any more than just Googling Oakland and realizing where Oakland is proximate to the Bay Area. But if the port wanted to use a descriptor or tell people where it's located, it could have used the phrase located in or on the San Francisco Bay. But that's not what the port did. The port replaced its registered trademark, Oakland International Airport, with a new trademark, a new brand, San Francisco Bay, Oakland International Airport. So that they're using it not as a descriptor. They're using it as a moniker. They're using it as a source identifier. So there's a way to describe a location. There's a way to describe where they are located without incorporating it into their brand. And we would have no objection to that. On affiliation, Your Honor, as I understood my colleagues' arguments, they made essentially three arguments. And I want to respond to them. First, they suggest that the court's analysis of affiliation wasn't tethered to a purchasing decision. I believe they said in their briefs it was free-floating. I would first remark that under Sleecraft, there's no additional requirement that the court run through the factors and then add additional factor to say, and here's how it would affect a purchasing decision. I would submit that it's implicit in the Sleecraft analysis that once the court undertakes that analysis, that the court is finding that the marks are confusingly similar and that it will have some effect on a purchasing decision. And plaintiffs don't suggest or refer the court to any case in which a court has undertaken an additional analysis of tethering affiliation to purchasing confusion. But in any case, I don't think that's a valid criticism here, because the district court didn't look at affiliation in a vacuum. It looked at evidence and marketplace consequence – sorry, marketplace context, and it found likely confusionist affiliation. And I think the court got it right with the Disney example, that one could go to Disney, North Dakota and realize they're not at Disney in Los Angeles or Disney in Hollywood, Florida, but they would think that there is some sort of affiliation or connection between the owners of these marks. And if consumers have a bad experience in Disney, North Dakota, find it of a lower quality, they have a bad experience, it will inure to the detriment of the Disney brand. And if the court has any doubt that the district court understood that affiliation is tied to purchasing confusion, I would urge the court to read the preliminary injunction transcript at ER 79, where the court makes that connection, and also make the observation that the district court accredited San Francisco's evidence that travelers who mistakenly believe that the airports are controlled by the same city or management will begin to associate Oakland's lower-ranked different airport with San Francisco's. Again, something that can only happen if consumers or purchasers would consider traveling to one or either airport. And this type of confusion, Your Honors, affects San Francisco. It affects its bottom line. It hurts travelers. And it takes San Francisco's ability to control its goodwill out of its hand. Second, I think we've covered this, but it's worth mentioning. There's criticism over the labels here, the word affiliation. Again, that comes straight from the Lanham Act. And the Lanham Act doesn't get it. Does it connect to Sleek Craft or any of the factors there? Or is that a new, you know, in trouble with these two different concepts where the district judge says, well, there are three types of confusion, and then there's the Sleek Craft factors. What's the connection, in your view? You follow the Lanham Act to determine whether the type of confusion is actionable. And affiliation confusion, sponsorship confusion, clearly is. So if you believe that, then you don't need to worry about Sleek Craft. No. Then you apply to determine whether there's a likelihood of confusion. So the statute has a language, has a broad concept of confusion. The Sleek Craft is the test that this Court applies to determine whether that is likely. And I would refer the Court to the Fleischman case on this point, because that's the black and white beer versus black and white whiskey case. And in that case, one of the takeaways was it's not material for the district court there to have used the word affiliation as opposed to approval. What the Court said there is, and I'm quoting, it's our view and we so hold that the average purchaser, as we would be likely to believe, as he noted the black and white beer in a Ralph's supermarket wouldn't think that the maker of the beer had, sorry, we believe that he would think that the maker of the beer had some sort of connection or concern with the company that made the whiskey. It's not material whether we think that the makers of the whiskey were actually brewing or bottling the beer, or whether it was being produced under their supervision or pursuant to some other arrangement. He'd probably not concern himself with that detail. And we see some consistency in the Court's decision in the HMH publishing v. Brincat case, and it recognized that the use of playboy and bunny in the context of automotive businesses may cause confusion among consumers with respect to the police sponsorship of the products, even though it's unlikely that the consumers would mistake a car with a well-known magazine. You're heading into borrowed time, so I want to see if my colleagues have questions for you. Judge Boggs, Judge Mendoza. I'm good. Mr. Gujar, I just want to thank you for your presentation. I want to keep us on track here this morning. Thank you very much, and we'll hear from Mr. Berg. Thank you. I want to start by answering a question you asked the other counsel, and the question was if this Court concludes that the District Court was wrong on its affiliation analysis, can the injunction still be held? And the answer is no, it has to be vacated. The District Court specifically found there was no other kind of confusion. It rejected the idea that there was point-of-sale confusion, it rejected the idea that there was initial interest confusion. The only kind of confusion that the District Court found was affiliation confusion, and if that doesn't stand, the injunction has to be vacated. I guess the question I would have is, is that really how our Court has applied Sleecraft? Because these are all different sort of tests or ways of looking at whether something is confusingly similar. And we've said, you know, a big factor is the name, a big factor is the market, the product. I mean, here the issue for me is we've got a very similar name, same geographic area, same market. So some of the nuances of the consumer care theory are interesting, but I'm not sure they overcome those other pieces of this. It seems to me they do, Your Honor. The thing to recognize is, first of all, passengers don't buy anything from an airport, they buy from an airline. The airport is simply the place they go to get on the airplane. And there's no evidence that they've presented or that Judge Hickson had in front of him or that he relied on that consumers care who owns an airport that they are going to fly into or out of when they make the decision to buy that airline ticket. And absent that, this is exactly the sort of generalized confusion that this Court held isn't actionable in both Reardon and the Bosley cases, which we cite in our brief. Before I get past it, you asked me about the status of the new name, and I want to put it up. The Board adopted and has been using the new name since July of 2025. Which new name are we talking about now? The Oakland-San Francisco Bay Airport. The new new name. The new new name, okay. Sorry, there's no better way to say it than that. I apologize. Your Honor. So you've been using that name? Yes, since July. And no litigation thus far? Again, this is not in the record, but it is my understanding that the City of San Francisco intends to amend its existing complaint to challenge that. Okay, but not, but haven't done so thus far? Has not done so as of today, Your Honor. Okay. Why San Francisco Bay? Why do we want to use San Francisco Bay? Because we want to trade on the goodwill of San Francisco. Oakland is located on the San Francisco Bay. For lots of people, this area is known as the Bay Area or the San Francisco Bay Area. One way to make sure that people who aren't familiar with it know where Oakland is, is to use that Bay Area. The Disneyland example isn't on point. If I go to Disneyland, North Dakota, I'm going to buy a ticket and go into Disneyland, North Dakota. Again, it's the same thing with Fleischman. What you're really talking about is somebody purchasing a product because they misunderstand who manufactured the product, who that person is affiliated with. That's not what happens here. What happens here is people purchase airline tickets to get to a destination and pay a price. And confusion as to who owns the airport simply doesn't affect their decision, and therefore it's not actionable under the Lanham Act. Judge Boggs brought up the example of the Baltimore-Washington International Airport. One interesting point about that is that that airport is owned neither by the City of Baltimore nor the City of Washington, but it's owned by Maryland. But no one cares. They fly into the Baltimore-Washington Airport. If that's where they're closer to where they want to be, they may fly into Dulles. I've flown into downtown in Washington. The idea that you can look at Sleetcath untethered to the idea of purchasing decisions turns the Lanham Act on its head. What if Oakland had decided to use San Francisco Bay International Airport? I think a lot of the arguments you're making would hold. Consumers would still, you know, very sophisticated, would go on the website and make sure that that's actually Oakland. They wouldn't care if it's really actually affiliated with SFO. But the name there would be basically identical. But again, that's not what's before your honor. What's before your honor is a name that identifies it as Oakland, identifies it as being in San Francisco Bay, identifies it as an international airport. No, no, but the point of the question is to focus the attention on the name because I think if you're prepared to agree that the name San Francisco Bay International Airport would be problematic, what's doing the work here is the name and more than anything else. Your honor, I would agree it would be a closer question. I still think they'd have to put in evidence of some kind of consumer confusion because that's what the Lanham Act protects against, consumer confusion. Okay. Thank you, Mr. Berg. Thank you, Mr. Gujar. This case is submitted.
judges: Boggs, BRESS, MENDOZA